UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHERYL A. COULTER,

                            Plaintiff,

v.                                                    5:20-CV-0533
                                                      (GTS/ATB)
BARBEQUE INTEGRATED, INC.,
doing business as Smokey Bones,

                            Defendant.
_____

APPEARANCES:                              OF COUNSEL:

DiMARTINO LAW OFFICE                  ANTHONY J. DiMARTINO, JR., ESQ.
  Counsel for Plaintiff
Canal Commons
28 West Bridge Street
Oswego, NY 13126

BARCLAY DAMON LLP                     THOMAS B. CRONMILLER, ESQ.
  Counsel for Defendant
2000 Five Star Bank Plaza
100 Chestnut Street
Rochester, NY 14604-2072

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this personal injury action filed by Cheryl A. Coulter

("Plaintiff") against Barbeque Integrated, Inc., doing business as Smokey Bones ("Defendant"),

is Defendant's motion for summary judgment. (Dkt. No. 22.) For the reasons set forth below,

Defendant's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Summary of Complaint and Removal Thereof

Generally, Plaintiff's Complaint claims that Defendant was negligent when it caused her to trip and fall over a "bunched up" or "folded up" rug in the entrance to its restaurant in Syracuse, New York, on the evening of April 1, 2017, breaking her patella.  (Dkt. No. 2.) Following the filing of Plaintiff's Complaint in New York State Supreme Court (Oswego County) on March 17, 2020, and service of that Complaint on Defendant on April 10, 2020, Defendant removed the Complaint to this Court based on diversity jurisdiction on May 11, 2020. (Dkt. No. 1.)[1]

Granted, Defendant's Notice of Removal appears to have been filed one day late.  *See* 28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is

---

[1] The Court finds that it has subject-matter jurisdiction over this action because the parties are diverse and the amount-in-controversy requirement has been satisfied.  The Complaint alleges that, although Defendant "regularly conducts business in New York State as a food and beverage operation," Defendant is a "corporation organized and existing pursuant to the laws of the State of Delaware." (Dkt. No. 1, Attach. 3, at ¶ 2.)  Moreover, the Notice of Removal states that "Barbeque Integrated is–and has been at all times relevant to this action–a foreign corporation, incorporated in the state of Delaware, with its principal place of business located at 2999 NE 191 Street, Suite 500 Aventura, Florida 33180." (Dkt. No. 1, at ¶ 8.)  Finally, the Complaint alleges that Plaintiff suffered a "broke[n] . . . patella," "pain," and "emotional anguish," for which she has incurred and continues to incur "medical expenses."  (Dkt. No. 1, Attach. 3, at ¶¶ 6-7.)  *Cf. Kurtz v. Uber Tech., Inc.*, 21-CV-6188, 2021 WL 4777973, at *3 (S.D.N.Y. Oct. 13, 2021) (finding amount-in-controversy satisfied where, although the complaint did not specify the precise damages sought, it alleged "a left knee patella fracture, a forehead concussion, contusions of the arms and leg, and right knee pain," and sought "damages to compensate her for past, present, and future doctor and hospital bills and for pain and suffering from her injuries").

shorter."). However, Plaintiff has not sought remand. (*See generally* Docket Sheet.) Moreover, more than thirty days have passed since the filing of the Notice of Removal. *See Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 131 (2d Cir. 2006) ("[A] district court may not act to remand on its own motion more than 30 days after removal in the absence of a party's timely remand motion, and if it does so, a court of appeals may review and correct the improper remand."); *Jimenez-Castro v. Greenwich Ins. Co.*, 20-CV-9210, 2020 WL 7352505, at *2 (S.D.N.Y. Dec. 15, 2020) ("A district court can remand *sua sponte* on procedural grounds within thirty (30) days of the filing of the notice of removal."). As a result, the Court will not *sua sponte* remand this action because of untimely removal.

**B.    Summary of Parties' Arguments**

Generally, in support of its motion for summary judgment, Defendant asserts two arguments: (1) Plaintiff is unable to establish that the cause of her fall was the result of a defective or dangerous condition, because (a) Plaintiff testified she did not see the rug before her fall, (b) she has adduced no admissible record evidence that the rug was "folded up" or otherwise defective in some way before her fall, and (c) it is just as likely that some other factor, such as a misstep or a loss of balance, caused Plaintiff's trip-and-fall accident; and (2) even if Plaintiff's fall was caused by a defective or dangerous condition, Plaintiff is unable to establish that Defendant created or had actual or constructive notice of a defective or dangerous condition, because (a) she has adduced no admissible record evidence that Defendant's employees had been informed by patrons (before the incident) of people having tripped on the rug, and (b) in any event, she has adduced no admissible record evidence that any defective or dangerous condition existed for a sufficient length of time before the accident to enable Defendant to correct it. (Dkt.

No. 22, Attach. 5.)

Generally, in opposition to Defendant's motion, Plaintiff asserts three arguments: (1) she has adduced admissible record evidence from which a rational fact finder could conclude that her fall was the result of a defective or dangerous condition, because (a) she testified in her deposition that immediately before her fall she felt her right foot "catch the rug" in question, and (b) Ms. Vosseller testified in an affidavit that immediately after the fall she noticed the "folded up carpet" beneath Plaintiff; (2) Plaintiff has adduced admissible record evidence from which a rational fact finder could conclude that Defendant had constructive notice of the defective or dangerous condition, because (a) the aforementioned evidence establishes that the folded-up rug was in the entrance way of Defendant's restaurant, and (b) both Plaintiff and Ms. Vosseller have testified that two other patrons stated that they had witnessed other people trip over the "bunched up" rug before Plaintiff's fall; and (3) Defendant has failed to establish that Plaintiff "cannot produce admissible evidence to support the fact [in question]" under Fed. R. Civ. P. 56(c)(1)(B), because the statements in question are admissible under Fed. R. Evid. 803(1) (providing a hearsay exception for "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it") and/or Fed. R. Evid. 803(2) (providing a hearsay exception for "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused").  (Dkt. No. 25, Attach. 1.)

Generally, in its reply memorandum of law, Defendant asserts two arguments: (1) Plaintiff has failed to provide any evidence as to the cause of her fall, because (a) her purported "Response to Defendant's Statement of Material Fact" is defective in that it fails to specifically respond to Defendant's factual assertions, and (b) in any event, Plaintiff's reliance on the

4

testimony of Ms. Vosseller is misplaced in that she did not notice the rug being "folded up" until *after* the fall; and (2) Plaintiff submits inadmissible hearsay that is unable to defeat a motion for summary judgment, because (a) she has made no showing that the unidentified man and woman upon whom she relies will be made available to testify at trial, and (b) in any event, even if the statements of the man and woman were admissible at trial, those statements do not establish how long before Plaintiff's fall the defective or dangerous condition existed (or even if the condition was the same as the condition that caused Plaintiff's fall).  (Dkt. No. 26.)

## C.    Statement of Undisputed Material Facts

Except otherwise noted,[2] the following factual assertions have been asserted (and supported by specific citations to the record) by Defendant in its Statement of Material Facts, and not expressly denied by Plaintiff in matching numbered paragraphs (followed by specific citations to the record) in a Response to the Statement of Material Facts, as required by Local Rule 56.1 of the District's Local Rules of Practice.

Instead, Plaintiff has filed a purported "Response to Defendant's Statement of Material Facts" that is defective in three ways: (1) it contains only twelve paragraphs (not the twenty-five paragraphs contained in Defendant's Statement of Material Facts); (2) it does not *match* Defendant's paragraphs; (3) it does not expressly "admit" or "deny" any of Defendant's factual

---

[2]      The Court qualifies its recitation of undisputed material facts with the prefatory phrase "except otherwise noted," because it has added to Defendant's Statement of Material Facts a few factual assertions that it has deemed to be undisputed by the parties based on the Court's ordinary review of the record to determine whether Defendant's factual assertions have indeed been supported by the record.  Although the Court has no duty to *sua sponte* scour the record for material evidence, it will not turn a blind eye to such evidence that it comes across. *See, e.g., Toscano v. Petsmart, Inc.*, 16-CV-0587, 2018 WL 813633, at *1 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.).

assertions.  (*Compare* Dkt. No. 22, Attach. 6 [Def.'s Statement of Material Facts] *with* Dkt. No. 25, Attach. 2 [Plf.'s Response Thereto].)[3]  Under these circumstances, the Court may, and does, disregard Plaintiff's purported "Response to Defendant's Statement of Material Facts."

1. Plaintiff is an individual who resides at 231 Kingdom Road, Oswego, New York 13126.

2. Defendant is a food service company that owns and operates a chain of restaurants at several locations, including the restaurant located at 4036 State Route 31, Liverpool, New York 13090 ("the Restaurant").

3. Plaintiff seeks damages for personal injuries she allegedly sustained as a result of a trip-and-fall accident when she walked through the foyer of Defendant's Restaurant on Saturday, April 1, 2017.

4. The Restaurant has a single entrance accessible to the general public.

5. Inside the single entrance to the Restaurant is a foyer that leads to a second door, which leads to a greeter stationed to address reservations and coordinate seating within the Restaurant.

6. On Saturday, April 1, 2017, at about 7:00 p.m., Plaintiff and her daughter, Jessica Vosseller, arrived at the Restaurant for dinner.

7. Upon approaching the entryway from the parking lot, Ms. Vosseller pulled open

---

[3]       Compounding Plaintiff's error, Defendant has filed (along with its reply memorandum of law) a "Response to Plaintiff's Statement of Material Facts," as if Plaintiff had filed a cross-motion for summary judgment, which she clearly had not.  (*Compare* Dkt. No. 26, Attach. 1 [Def.'s "Response to Plaintiff's Statement of Material Facts"] *with* Dkt. No. 25 [Plf.'s Opposition to Def.'s Motion for Summary Judgment].)  Both counsel are respectfully reminded to not simply read but carefully comply with Local Rule 56.1 in the future.

the door and held it for Plaintiff, who then entered; as she did so, she noticed that there were at least twenty people sitting and standing on the sides of the foyer, waiting for their tables.

8.      Because of the crowd, Plaintiff estimated there was about a four-foot wide path to towards the greeter station.

9.      With Ms. Vosseller following behind her, Plaintiff walked about three to four feet into the foyer and then fell.

10.      Plaintiff fell within about ten feet of the greeter at the greeter station.[4]

11.      Before she fell, Plaintiff felt the toes of her right foot "catch the rug."

12.      As she fell, Plaintiff's right knee hit the ground, and she came to rest on her hands and knees.

13.      At the time, Plaintiff's hands were on tile or stone (not a rug or carpet), and her knees were (she believes) also on tile or stone.

14.      After landing on her hands and knees, Plaintiff did not look back to observe a rug or carpet.

15.      However, immediately after Plaintiff fell, Ms. Vosseller observed a folded-up rug or carpet beneath Plaintiff.[5]

16.      Ms. Vosseller yelled to Defendant's manager to move the rug.[6]

17.      Plaintiff was on her hands and knees for about four minutes before someone (who

---

[4]      (Dkt. No. 25, Attach. 3, at ¶ 10 [Affid. of Jessica Vosseller].)

[5]      (Dkt. No. 25, Attach. 3, at ¶ 5 [Affid. of Jessica Vosseller].)

[6]      (Dkt. No. 22, Attach. 3, at 11 [attaching page "36" of Examination Before Trial of Plaintiff]; Dkt. No. 25, Attach. 5, at 8 [attaching page "11" of Examination Before Trial of Dolores Fullerton].)

she believes was her daughter) helped her up.

18.    By the time Plaintiff was helped up, Defendant's manager on duty that evening,

Dolores "Dee" Fullerton, had come over (having been informed of the incident by a greeter).[7]

Ms. Fullerton asked Plaintiff whether she was okay and whether she needed Ms. Fullerton to do

anything for her. Ms. Vosseller answered for Plaintiff and requested that Ms. Fullerton remove

the rug.

19.    Plaintiff then sat down on a bench in the foyer and was provided a pack or bag of

ice by Ms. Fullerton.

20.    Approximately fifteen to twenty minutes later, Plaintiff and Ms. Vosseller were

seated at a table.

21.    As Plaintiff sat on the bench, Ms. Vosseller heard a gentleman who witnessed the

fall state that "the carpet was bunched up prior to [the] fall."[8]

22.    Plaintiff did not observe the condition of the rug or carpet before her fall.

23.    According to Plaintiff, even after her fall, she "did not realize there was a rug."

---

[7]    (Dkt. No. 25, Attach. 5, at 8 [attaching page "11" of Examination Before Trial of Dolores Fullerton].)

[8]    (Dkt. No. 25, Attach. 3, at ¶ 8 [Affid. of Jessica Vosseller]; Dkt. No. 25, Attach. 4, at 11 [attaching page "37" of Examination Before Trial of Plaintiff].)  Although Defendant challenges the admissibility of this statement, the Court rejects that challenge for the reasons stated below in Part III of this Decision and Order.  However, the Court is persuaded by Defendant's challenge to the admissibility of the following other hearsay statements: (1) Plaintiff's deposition testimony that, after her accident (e.g., as she was sitting on the bench), "[t]wo different people" (a man and a woman) told her that they had "watched many people trip over that rug"; and (2) Ms. Vosseller's affidavit testimony that, immediately after the fall, "a woman stated that other people tripped over the same rug prior to [the] fall."  (Dkt. No. 25, Attach. 4, at 11  [attaching page "37" of Examination Before Trial of Plaintiff]; Dkt. No. 22, Attach. 3, at 12 [attaching page "38" of Examination Before Trial of Plaintiff]; Dkt. No. 25, Attach. 3, at ¶ 9 [Affid. of Jessica Vosseller].)

24.     At the time, Plaintiff surmised that she tripped over a rug because, in her own words, "it felt like a rug when [she] went down" and it "felt like [she] tripped over a rug."

25.     Plaintiff has no knowledge of Defendant's employees having been informed by patrons (before the incident) of people having tripped on the rug.

26.     Ms. Fullerton has worked continuously (except for one year) at the Restaurant since February of 2005 and has served as its General Manager for seven or eight years, including on April 1, 2017.

27.     Ms. Fullerton was present at the restaurant on April 1, 2017, from approximately 8:00 a.m. through 8:30 p.m. or 9:00 p.m., including at the time that Plaintiff fell.

28.     Ms. Fullerton never observed, or was told of, any falls on the rug or carpet in the foyer that Plaintiff claimed to have tripped over, before Plaintiff's fall on April 1, 2017.

29.     Ms. Fullerton never observed or was told of any defective or dangerous conditions associated with the carpet or rug prior to Plaintiff's fall on April 1, 2017, including, but not limited to, that the rug was curled up, creased, or folded over, or was known to slide or move.

30.     Ms. Fullerton never received or was told of any complaints from the Restaurant's patrons regarding the condition of the rug or carpet before Plaintiff's fall on April 1, 2017.

## II.     GOVERNING LEGAL STANDARDS

### A.     Procedural Legal Standard

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).[9]  As for the materiality requirement, a dispute of fact is

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ.

P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute.[10]

Of course, when a non-movant willfully fails to respond to a motion for summary

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

---

[9]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[10]      *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 56.1. What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[11]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[12] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See*

---

[11]     Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1(b).

[12]     *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determines

that the moving party has met its burden to demonstrate entitlement to the relief requested

therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be

deemed as consent to the granting or denial of the motion, as the case may be, unless good cause

is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30,

2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at

*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.      Substantive Legal Standard

To "establish a prima facie case of negligence under New York law, three elements must

be demonstrated: (1) the defendant owed the plaintiff a cognizable duty of care as a matter of

law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result

of that breach." *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998).  As a result, an owner or

occupant of a commercial establishment has "a general duty to maintain [the establishment] in a

reasonably safe condition so as to prevent the occurrence of foreseeable injuries."  *Maravalli v.*

*Home Depot, U.S.A., Inc.*, 698 N.Y.S.2d 708, 708-09 (N.Y. App. Div., 2d Dep't 1999).[13] More

specifically, to impose this duty on a defendant the plaintiff must show two things: (1) that the

---

[13]      The Court notes that foreseeability is often the essence of such a duty.  *See, e.g.,*
*Lisi v. MRP Holdings, Inc.*, 238 A.D.2d 316, 317 (N.Y. App. Div., 2d Dep't 1997) (finding that
store had no duty to customer who was injured when she was knocked to the floor by a dog that
was running loose in the store); *Miller v. City of Syracuse*, 685 N.Y.S.2d 531, 532 (N.Y. App.
Div., 4th Dep't 1999) (finding the presence of nonticketed individuals in an airport baggage claim
area carrying balloon strings in which plaintiff's crutches became entangled did not constitute a
foreseeable danger).

alleged dangerous condition existed;[14] and (2) either (a) that the defendant created the dangerous

condition,[15] or (b) that both (i) the owner or occupant had actual or constructive notice of the

dangerous condition,[16] and (ii) the dangerous condition existed for a sufficient period of time so

as to charge the owner or occupant with the responsibility to take corrective action.[17]

## III.   ANALYSIS

As indicated above in Part II.B. of this Decision and Order, the Court's analysis begins

with the question of whether a dangerous condition existed at the time of Plaintiff's fall.  After

carefully considering the matter, the Court finds that admissible record evidence exists that,

before Plaintiff's fall, a dangerous condition did indeed exist in the form of a "bunched up" or

"folded up" carpet or rug in the entrance to Defendant's restaurant.[18]

---

[14]      *See, e.g., Ribadi v. Atl. & Pac. Tea Co., Inc.*, 702 N.Y.S.2d 316, 317 (N.Y. App.
Div., 2d Dep't 2000) (requiring the existence of a "dangerous condition" in a slip-and-fall case,
and finding such a condition existed in the form of a "rolled up" carpet in the produce aisle of a
grocery store).

[15]      *See, e.g., Ribadi v*, 702 N.Y.S.2d at 317 (granting defendant's motion for
summary judgment because plaintiff failed to prove that defendant created the alleged dangerous
condition, which was a "rolled up" carpet in the produce aisle).

[16]      *See, e.g., Ribadi v.*, 702 N.Y.S.2d at 317 ("A plaintiff in a slip-and-fall case must
establish that the defendant either created the condition that caused the accident or had actual or
constructive notice of the condition . . . .") (internal citations omitted).

[17]      *See Gordon v. Am. Museum of Nat. History*, 67 N.Y.2d 836, 837-38 (N.Y. 1986)
("[A] defect must be visible and apparent and it must exist for a sufficient length of time prior to
the accident to permit defendant's employees to discover and remedy it . . . .") (internal citations
omitted), *accord*, *Ribadi v.*, 702 N.Y.S.2d at 317.

[18]      Not surprisingly, a "bunched up" rug has been treated as a dangerous condition by
New York State courts.  *See, e.g., Richardson-Dorn v. Golub Corp.*, 676 N.Y.S.2d 260, 261-62
(N.Y. App. Div., 3d Dep't 1998) (treating a "bunched up" rug as a dangerous condition); *cf.
Denker v. Century 21 Dep't Stores, LLC*, 866 N.Y.S.2d 681, 682 (N.Y. App. Div., 2d Dep't
2008) (treating "curled" edge of carpet mat as a dangerous condition); *Ribadi*, 702 N.Y.S.2d at

Granted, the Court agrees with Defendant that Plaintiff's testimony that she felt the toes of her right foot "catch the rug," and Ms. Vosseller's testimony that she observed the "folded up" rug or carpet immediately after Plaintiff's fall, do not make it more likely than not that a dangerous condition exited before the fall: absent other evidence, this testimony could just as likely lead to the conclusion that Plaintiff's manner of walking caused her foot to catch the rug, and that her catching of the rug caused it to "fold[] up." *See* Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence . . . ."). However, there is such other evidence: Ms. Vosseller's affidavit testimony that, minutes after the fall, a gentleman who witnessed the fall stated that "the carpet was bunched up prior to [the] fall." (Dkt. No. 25, Attach. 3, at ¶ 8 [Affid. of Jessica Vosseller].)[19]

Although Defendant is correct that this statement is hearsay under Fed. R. Evid. 801, Defendant has not persuaded the Court that it is inadmissible hearsay. To the contrary, the testimony is admissible as a statement by the gentleman describing the bunched-up condition of the rug during the instant before Plaintiff's fall, made immediately after the gentleman perceived

---

317 (treating a "rolled up" carpet as a dangerous condition).

[19] The Court notes that Ms. Vosseller's affidavit testimony that, immediately after the fall, "a woman stated that other people tripped over the same rug prior to [the] fall" does not constitute such evidence because the woman did not indicate that the dangerous condition had been the same: for example, she did not state that the "other people" had tripped over the rug "the same way" or "for the same reason" as Plaintiff, or "because it had been bunched up." (Dkt. No. 25, Attach. 3, at ¶¶ 8-9 [Affid. of Jessica Vosseller].) Similarly, Plaintiff's deposition testimony that, after her fall (e.g., as she was sitting on the bench), "[t]wo different people" (a man and a woman) told her that they had "watched many people trip over that rug" does not constitute such evidence for the same reason. (Dkt. No. 25, Attach. 4, at 11 [attaching page "37" of Examination Before Trial of Plaintiff]; Dkt. No. 22, Attach. 3, at 12 [attaching page "38" of Examination Before Trial of Plaintiff].) For example, the others could have tripped because the rug was frayed or torn. *See, e.g., Rekemeyer v. Knickerbocker Furniture Co., Inc.*, 635 N.Y.S.2d 320, 320-21 (N.Y. App. Div., 3d Dep't 1995) (treating "a rip in the carpet" as a dangerous condition).

that condition.  *See* Fed. R. Evid. 803(1) (providing a hearsay exception for "[a] statement

describing or explaining an event or condition, made while or immediately after the declarant

perceived it").[20]  The immediacy requirement has been satisfied because admissible evidence

exists that the gentleman made the statement as he and Plaintiff sat on a bench about four

minutes after he perceived the condition (and Plaintiff's fall).  *See, e.g., U.S. v. Lovato*, 950 F.3d

1337, 1345 (10th Cir. 2020) ("[T]he three to four-minute delay between the shooting and first

descriptive statements did not destroy the necessary contemporaneity.").

     Moreover, the Court is not persuaded that, under the circumstances, the gentleman need

be identified and available at trial for this present sense impression to be admissible.  Granted,

generally, courts are hesitant to admit the present sense impression of an unidentified bystander.[21]

However, here, based on the evidence, it is reasonable to infer that the gentleman was one of the

at least twenty people sitting or standing on the sides of the foyer at the time of Plaintiff's fall,

and that he observed both the fall and rug only a few feet away from him as he waited for his

table.  Furthermore, Defendant has not challenged the gentleman's capacity to observe.  Finally,

the Court is not persuaded that the gentleman need be available at trial for this present sense

impression to be admissible.  *See, e.g., Lovato*, 950 F.3d at 1345 ("Under Rule 803(1), a

---

[20]    The Court notes that the statement would *not* be admissible as an excited
utterance under Fed. R. Evid. 803(2) (providing a hearsay exception for "[a] statement relating to
a startling event or condition, made while the declarant was under the stress of excitement that it
caused"), given the lack of any suggestion that the gentleman was excited.  For example, no curse
word preceded, or exclamation point followed, his factual assertion, which could as easily have
come in the form of a meditative whisper as a declaration of outrage.

[21]    *Cf.* Fed. R. Evid. 803(1), Advisory Committee's Note ("However, when declarant
is an unidentified bystander, the cases indicate hesitancy in upholding the statement alone as
sufficient [to demonstrate that the declarant actually perceived the incident].").

statement describing or explaining an event or condition, made while or immediately after the declarant perceived it is admissible as an exception to the rule against hearsay, *regardless of whether the declarant is available as a witness*.") (internal quotation marks omitted, and emphasis added).

The next questions that arise, then, are whether Defendant *created* the dangerous condition, and (if it did not) whether Defendant had *actual* notice of the dangerous condition. The Court need not linger on these questions. No evidence (or even argument) has been adduced that Defendant created the dangerous condition. (*See generally* Dkt. Nos. 22, 25.) Nor has any evidence (or even argument) been adduced that Defendant had actual notice of the dangerous condition. (*Id*.)

The question then becomes whether any evidence been adduced that Defendant had *constructive* notice of the dangerous condition. After carefully considering the matter, the Court finds that the only possible evidence of such constructive notice is the fact that, at the time of the accident, the greeter was present at the greeter station only ten feet away from the accident.[22]

---

[22]     The Court notes that Ms. Vosseller's affidavit testimony that, immediately after the fall, "a woman stated that other people tripped over the same rug prior to [the] fall" does not suffice for each of two alternative reasons: (1) the woman did not state that the "other people" had tripped over the rug the "same way" or "for the same reason" as Plaintiff, or because the rug had been "bunched up"; and (2) in any event, the woman did not state *when* the "other people" had tripped over the "bunched up" rug (e.g., fifteen minutes before Plaintiff's fall or years before Plaintiff's fall). (Dkt. No. 25, Attach. 3, at ¶¶ 8-9 [Affid. of Jessica Vosseller].) Similarly, Plaintiff's deposition testimony that, after her fall (e.g., as she was sitting on the bench), "[t]wo different people" (a man and a woman) told her that they had "watched many people trip over that rug" does not suffice for the same two alternative reasons. (Dkt. No. 25, Attach. 4, at 11 [attaching page "37" of Examination Before Trial of Plaintiff]; Dkt. No. 22, Attach. 3, at 12 [attaching page "38" of Examination Before Trial of Plaintiff].) In any event, "a general awareness that . . . floor mats occasionally bunch is insufficient by itself to constitute notice of a dangerous condition . . . ." *Hughes v. Carrols Corp.*, 670 N.Y.S.2d 610, 611 (N.Y. App. Div., 3d Dep't 1998) (citations omitted).

However, it does not appear that the mere proximity of the greeter to the offending rug would suffice to give rise to constructive notice to Defendant under the circumstances.[23]  For example, the fact that there were at least 20 people sitting and standing on the sides of the foyer, waiting for their tables, leaving only about a four-foot wide path between them, suggests the greeter may have been busy attending to other patrons or had his or her view of the rug obstructed.

In any event, and most importantly, even if this evidence were to suffice, no admissible evidence exists that the dangerous condition existed long enough for any employee of Defendant (whether that be the greeter, Ms. Fullerton, or someone else) to *remedy* the dangerous condition (e.g., through smoothing out the rug and installing non-skid material under it, or removing the rug and hanging up a warning sign, etc.).  For example, if the "bunch[ing] up" occurred mere minutes or seconds before Plaintiff's fall (and it is mere speculation that it did not), a reasonable amount of time would not have existed for Defendant to remedy the dangerous condition.[24]  It

---

[23]    *See, e.g., Ortiz v. Wal-Mart Stores East, LP*, 17-CV-0945, 2019 WL 1171566, at *7 (S.D.N.Y. March 13, 2019) ("While Plaintiff is correct that there is evidence that there were three of Defendant's employees in the area of the dangerous condition prior to the accident . . . , this alone is not enough to show that Defendant had constructive notice."); *Gonzalez v. Kmart Inc.*, 13-CV-5910, 2016 WL 3198275, at *5 (E.D.N.Y. June 8, 2016) ("The mere fact that a Kmart employee may have been close to the spill at the time Plaintiff fell is insufficient to create an inference that the employee saw the spill before the accident . . . ."); *Hammond-Warner v. United States*, 797 F. Supp. 207, 212 (E.D.N.Y. 1992) ("[T]he mere proximity of employees is insufficient grounds on which to establish constructive notice."); *Benware v. Big V Supermarkets, Inc.*, 576 N.Y.S.2d 461, 463 (N.Y. App. Div., 3d Dep't 1991) ("[T]he fact that certain of defendant's employees were stationed near the site of the accident does not suffice to establish constructive notice . . . .") (citation omitted).

[24]    *See, e.g., Gordon v. Am. Museum of Nat. Hist.*, 67 N.Y.2d 836, 838 (N.Y. 1986) (granting museum's motion for summary judgment because, "on the evidence presented, the piece of paper that caused plaintiff's fall could have been deposited there only minutes or seconds before the accident and any other conclusion would be pure speculation"); *accord, Soto v. Michael's New York, Inc.*, 723 N.Y.S.2d 454, 455 (N.Y. App. Div., 1st Dep't 2001) (granting landlord's motion for summary judgment because "the wetness that allegedly caused plaintiff's

bears emphasizing that, despite how much sympathy the Court may have for Plaintiff, under the law Defendant is not strictly liable for her injuries.

For all of these reasons, the Court must, and does, grant Defendant's motion.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 22) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 2) is **<u>DISMISSED</u>**; and it is further

**ORDERED** that the Clerk of Court shall enter a Judgment for Defendant and close this action.

Date:   August 17, 2022
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

[slip and fall] accident could have been left on the stairs only minutes or seconds before the accident and any other conclusion would be pure speculation") (internal quotation marks and citation omitted).